## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Barred Business, John Cole Vodicka, and
Steven Williams,

*Plaintiffs*,

v.

Brian Kemp, Governor of Georgia, et al.,

*Defendants*.

CIVIL ACTION NO.
1:24-cv-02744-VMC

## RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED PRELIMINARY INJUNCTION

Defendants Governor Brian Kemp and Attorney General Chris Carr, through

counsel, file this opposition to Plaintiffs' Motion for a Temporary Restraining

Order and Expedited Preliminary Injunction (Doc. 2).

## INTRODUCTION

Although not constitutionally required to do so, Georgia authorizes its trial

courts to set bail for criminal defendants. *See* O.C.G.A. § 17-6-1 *et seq*. The

purpose of a pretrial bond is not to punish an accused prior to conviction, but "to

secure the appearance of the [accused] in court for trial." *Ayala v. State*, 262 Ga.

704, 705 (1993). Indeed, the State has "a compelling interest in ensuring that

pretrial detainees appear for trial and do not pose a risk of danger to their

community while on release." *Schultz v. State*, 42 F.4th 1298, 1324 (11th Cir.

2022). And it has a corresponding and legitimate interest in regulating its pretrial

-1-

detention and bail system, including the circumstances under which individuals and entities may post bond, whether by cash bail or surety, for defendants being detained on probable cause. To that end, Georgia, like all states, has an extensive statutory and regulatory scheme governing bonds, recognizances, and sureties. *See generally*, O.C.G.A. §§ 17-6-1 – 17-6-114.

Senate Bill 63, which was passed by the Georgia General Assembly in 2024, signed by Governor Kemp on May 1, and is set to go into effect on July 1, is a part of that regulatory scheme. It is aimed at achieving the same legitimate and compelling objectives as the larger regulatory system of which it is now a part. Subsection (4) of O.C.G.A. § 17-6-15(b), the provision of SB 63 challenged here, seeks to achieve those objectives by ensuring that individuals and organizations who opt to engage in the business of bailing out criminal defendants do so in a manner that comports with and does not undermine the State's interest in ensuring that pretrial detainees appear for trial. And it does so by regulating *conduct*, not speech. Those subject to the challenged regulations, including Plaintiffs, can continue to speak about, debate, and criticize Georgia's bail system as before. They just cannot engage in particular conduct—posting cash bail for criminal defendants—without first complying with the regulations and requirements that Georgia has long imposed on others participating in the bail system. Nothing about this violates the Constitution's free speech provisions, because paying cash bail is not inherently expressive conduct protected by the First Amendment, regardless of whether it is politically or socially motivated, and regardless of whether a payor

intends by its payment to express some sort of message. And Plaintiffs have fair notice of their obligations under the statute. It is not vague, much less impermissibly vague in all its applications.

Plaintiffs' eleventh-hour request that this Court grant the extraordinary relief of enjoining a duly enacted statute should be denied.

## BACKGROUND

In 2024, Georgia's General Assembly passed SB 63, which is set to take effect on July 1. The Bill is aimed at revising and reforming provisions of the Georgia Code relating to bonds and recognizances. Those changes include the imposition of requirements on "charitable bail funds," which are in the business of paying cash bail to secure the release of criminal defendants but, unlike professional bondsman and surety companies, have not been subject to any of Georgia's statutory regulations of its bail system. In particular, subsection (4) of O.C.G.A. § 17-6-15(b) now reads:

> (4) No more than three cash bonds may be posted per year by any individual, corporation, organization, charity, nonprofit corporation, or group in any jurisdiction. Every individual, corporation, organization, charity, nonprofit corporation, or group that purports to be a charitable bail fund with the purpose of soliciting donations to use for securing the release of accused persons shall be required to submit to the same requirements as any professional surety company, including, without limitation, the requirements set forth in paragraph (1) of this subsection and Code Sections 17-6-50, 17-6-50.1, and 17-6-51.

O.C.G.A. § 17-6-15(b)(4) (eff. July 1, 2024).

Plaintiffs are two individuals and a non-profit organization who oppose and advocate for changes in the money bail system. In addition to their advocacy on the issue, Plaintiffs utilize Georgia's cash bail system to bond out individuals detained on criminal charges. They filed suit on June 21—nearly two months after SB 3 was signed by the Governor and ten days before the law is to take effect—asserting a facial challenge to the constitutionality of subsection (4) of O.C.G.A. § 17-6-15(b) and naming as defendants Governor Kemp and Attorney General Carr, as well Keith Gammage and Will Fleenor, the Solicitors General of Fulton County and Athens-Clarke County, respectively. Plaintiffs filed the instant "emergency" motion for temporary restraining order on Saturday, June 22, seeking to enjoin subsection (4) of § 17-6-15(b) on grounds that it violates the First Amendment and is unconstitutionally vague. Doc. 22.

## ARGUMENT AND CITATION OF AUTHORITY

A temporary restraining order (or a preliminary injunction) is an extraordinary remedy, limited to situations where a party is threatened with "'imminent' irreparable harm." *Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1248 (11th Cir. 2016) (citation omitted). To secure preliminary relief, Plaintiffs must show (1) that they are likely to succeed on the merits of their claims, (2) that they will likely suffer irreparable harm absent a preliminary injunction, (3) that their potential injury outweighs the potential hardship on the State if an injunction were granted, and (4) that an injunction is in the public interest. *See Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (per curiam). Plaintiffs cannot

-4-

overcome this high bar. They will not succeed on the merits because Georgia's law does not regulate speech, does not infringe upon religious liberties, and is not vague. And even if there were some chance that Plaintiffs could ultimately prevail, the equities weigh heavily against granting an injunction at this time.

**I. Plaintiffs are unlikely to succeed on the merits of their claims.**

The first factor is "critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Plaintiffs must show that they are likely to succeed on the merits before they are entitled to preliminary relief. *See Barber v. Gov. of Ala.*, 73 F.4th 1306, 1317 (11th Cir. 2023). And that requires a "strong likelihood of success," not just a "mere possibility." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317–18 (11th Cir. 2019). But Plaintiffs cannot succeed, because the law is not on their side.

**A. Georgia's law does not run afoul of the First Amendment.**

*1. The challenged provision regulates conduct, not expression.*

Plaintiffs' free speech and association challenges fail at the outset because the statutory provision at issue regulates only conduct. The First Amendment prohibits states from enacting laws "abridging the freedom of speech." U.S. Const. Amend. I. When interpreting this command, the Supreme Court has distinguished between regulations of speech and regulations of conduct. *See, e.g., Sorrell v. IMS Health Inc.*, 564 U. S. 552, 567 (2011)). "[R]estrictions directed at commerce or conduct" generally do not abridge the freedom of speech, even if they impose "incidental burdens" on expression. *Id*. While the expressive nature of some conduct may bring it within the First Amendment's protection, not all conduct

intended to express an idea amounts to protected speech. *See, e.g., Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). Indeed, the Supreme Court has rejected the notion that "'an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea,'" making clear that First Amendment protection extends "only to conduct that is inherently expressive." *Id*. at 66 (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

The burden of proving that regulated conduct is inherently expressive falls on the person challenging the regulation. *See, e.g., Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). To determine if conduct is inherently expressive, courts ask "(1) whether 'an intent to convey a particularized message was present[]' and (2) whether 'in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it.'" *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018) (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)). The "context" in which the conduct occurs must make the actor's message clear, *id*. at 1241, and when "explanatory speech is necessary," that "is strong evidence that the conduct … is not so inherently expressive," *Rumsfeld*, 547 U.S. at 66.

Applying these principles here illustrates clearly that posting a cash bond for a criminal defendant is not inherently expressive. And even if in some (rare) instances such payments could qualify as inherently expressive conduct, Plaintiffs'

facial challenge would still fail, because they cannot show that cash bond payments are inherently expressive in every instance.

> ### 2. *Paying cash bail for a criminal defendant is neither speech nor inherently expressive conduct.*

Plaintiffs claim that they "intend to convey a message when they pay cash bail." (Doc. 2-1 at 12). They describe that message in various ways – as "opposition to the money bail system and its support for self-determination and opportunity for justice-impacted individuals," as the "belief that when justice-involved people are allowed freedom and given support, they and their communities can thrive," as "bring[ing] attention to the more than half-million people in jail who have not been convicted of any crime, but don't have the money to post bail" and as "Black mothers need to come home." (*Id.*; Compl. at ¶ 20). But even assuming this is sufficient to establish an intent to convey a particularized message, Plaintiffs cannot establish that a "reasonable person" who watches someone pay someone else's bail recognizes even "a generalized message." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004). Although a plaintiff need not prove that observers will understand the exact "narrow, succinctly articulable message" that she intended to communicate, *Food Not Bombs*, 901 F.3d at 1245, she must prove that the conduct always communicates—and that an observer will understand—at least a generic version of the intended message, *Holloman*, 370 F.3d at 1270. There is nothing like that here.

Inherently expressive conduct usually requires symbolism. *See Clark*, 468 U.S. at 293; *Food Not Bombs*, 901 F.3d at 1241. Courts have recognized that

symbolic conduct might involve flying a flag covered with a peace symbol, *Spence*, 418 U.S. at 410, or burning an American flag at an anti-government protest, *Texas v. Johnson*, 491 U.S. 397, 404–05 (1989), or hosting an open, communal meal in a public park to protest "hunger and poverty," *Food Not Bombs*, 901 F.3d at 1240. Paying someone's bail does not inherently symbolize anything. It does not speak out for or against the government or for or against any particular policy. On the contrary, to an objective observer, Plaintiffs' conduct conveys only that a person is engaging in a financial transaction—the same transaction that anyone paying another's bail, or some other court-related expenditure, would engage in, whether they objected to the cash bail system or not.

"The critical question is whether the explanatory speech is necessary for the reasonable observer to perceive a message from the conduct." *See Food Not Bombs*, 901 F.3d at 1244. Here, the answer to that question is clearly "yes." Indeed, Plaintiffs' own claims and arguments make clear that the messaging they attribute to the bond payments is actually communicated through their *speech*. (*See* Doc. 2-1 at 13 (pointing to supplementary speech "which includes communications to encourage both donations and public advocacy" and hosting brunches for community members to "gather and connect around shared causes.")). A regulated party cannot "transform conduct into 'speech' simply by talking about it." *Rumsfeld*, 547 U.S. at 65–66. Yet that is precisely what Plaintiffs attempt to do. And their political and social motivations, which Plaintiffs also describe at length, cannot transform what is plainly conduct into protected speech. *Id.*

Plaintiffs urge the Court to look at the "context" of the payments, arguing that "the court and jail staff" are the ones who "most closely observ[e] Plaintiffs' actions" and that they "understand" that Plaintiffs' actions "are an expression of their mission and beliefs." (Doc. 20-1 at 13). But even assuming some individuals are familiar with Plaintiffs' mission, that is surely because they have been privy to, at one time or another, explanatory *speech*. Should a new member join the court or jail staff, he or she would have no way of perceiving, without any explanation and solely from seeing someone come in and pay cash bail for another, a message from the payment, much less Plaintiffs' "mission and beliefs."

It is perhaps not surprising, then, that the Seventh Circuit recently found that the payment of cash bail by a nonprofit corporation—the very conduct at issue here—does not implicate the First Amendment. *Bail Project, Inc. v. Comm'r, Ind. Dept. of Ins.*, 76 F.4th 569, 572 (7th Cir. 2023). The plaintiff organization was, like Plaintiffs, "dedicated to ending cash bail and other policies that condition a defendant's pretrial release upon the payment of money" and, when it paid bail for a client, it developed an "individualized post-release support plan to help the client make it to future court dates." *Id.* at 573. And, also like here, the organization argued that its payment of bail was inherently expressive conduct because the organization "intends to convey a message through bail payments" and "when viewed in context, a reasonable observer would understand its payment as communicative." *Id.* at 576-577. The Seventh Circuit rejected these arguments, holding that the "act of paying cash bail does not inherently express any message"

or "communicate even the most general version of the [organization]'s message – its opposition to cash bail." *Id*. at 577. ("Without knowledge of The Bail Project's mission and repeat-player status, a reasonable observer would not understand its payment of cash bail at the clerk's office as an expression of any message about the bail system."). The same is true here.[1]

      3.  *Requiring entities that post cash bonds to comply with the same requirements governing surety companies is not a content-based regulation of speech*.

The same principle applies to—and defeats—Plaintiffs' argument that "the surety licensing requirement is a content-based restriction on protected speech." (Doc. 2-1 at 15-16). The challenged provision requires charitable bail funds (whether they be individuals, entities, or groups) that post cash bonds for criminal defendants, and thereby perform a role similar to that performed by professional surety companies, to meet the same requirements as professional surety companies. *See* O.C.G.A. § 17-6-15(b)(4). It imposes limitations and oversight over those opting to participate in the highly regulated sphere of the state criminal bail system. And it does so by regulating conduct—the posting of cash bonds—not speech. On its face, the provision affects "what [charitable bail funds] must *do* … not what they may or may not *say*." *Rumsfeld*, 547 U.S. at 60 (emphasis in

---

[1] Perhaps recognizing as much, Plaintiffs attempt to distinguish the case in a footnote by contending that their bail work "has a number of expressive elements missing from the record in that case." (Doc. 2-1 at 14, n. 2). But they do not identify any. And the "expressive elements" Plaintiffs describe elsewhere in their brief are of no help because, as shown above, they amount (at most) to "explanatory speech."

original). If a charitable bail fund opts to post cash bonds for criminal defendants, Georgia's regulatory requirements must be met. But nothing in the statute precludes Plaintiffs, or anyone, from soliciting donations and continuing to engage in any and all manner of speech on any and all topics.

Plaintiffs contend that the provision "singles out" entities that solicit donations for the purpose of bonding out criminal defendants because it does not apply to entities that solicit donations "for other purposes." But it makes sense that the provision does not cover entities that *do not* bond out criminal defendants, because regulating the bonding out of criminal defendants is the whole point of the statute. It is no surprise, in other words, that a regulatory statute is applicable only to those who engage in the *conduct* being regulated. And nothing about that amounts to "singling out" entities based on *speech*. Nor is the provision "content based," as Plaintiffs contend. It applies based on the nature of the conduct engaged in by an individual or entity, not the content of any speech undertaken by it. And it applies regardless of an entity's reasons for engaging in the conduct or any message it seeks to communicate by doing so. Whether an entity posts cash bonds for criminal defendants as a means of supporting the cash bail system, opposing the cash bail system, or for any other reason, it must comply with the statutory provision at issue. The regulations are neither content nor viewpoint based. They have "nothing to do with the content of speech but rather are imposed because of the nature of the regulated conduct." *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1253-1254 (11th Cir. 2004).

-11-

> 4. *Requiring entities that post cash bonds to comply with the same requirements governing surety companies is not a prior restraint of protected speech.*

Plaintiffs also contend that the challenged regulation is a prior restraint on speech because it requires individuals and entities to meet "numerous statutory criteria" and obtain approval before they are permitted to post cash bonds and, according to Plaintiffs, places "unfettered discretion over approval" in the hands of sheriffs. (Doc. 2-1 at 16). But this argument suffers from the same fatal flaw as those previously discussed. A prior restraint exists when the enjoyment *of protected expression* is contingent upon the approval of government officials. *See, e.g., White v. Baker*, 696 F. Supp. 2d 1289, 1306 (N.D. Ga. 2010). *See also United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000) ("A prior restraint *of expression* exists when the government can deny access to a forum before the expression occurs.") (emphasis added). Posting cash bonds is not protected expression. Thus, to the extent that the statutory provision can be said to be a licensing scheme at all, "it does not act as a prior restraint on *speech*—i.e., it does not require permission from the [government] to engage in *constitutionally-protected expression*." *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1299 (11th Cir. 2013) (emphasis added). *See United States v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000) (defining prior restraint as "the government's denial of access to *a forum for expression* before the *expression* occurs") (emphasis added). On the contrary, its requirements need be met only prior to engaging in non-expressive conduct – the posting of cash bonds. When, as here,

the conduct contingent upon government approval is not protected expression, there is no prior restraint.

> 5. *Even if the payment of cash bail for a criminal defendant could be inherently expressive conduct in some instances, Plaintiffs' facial challenge still fails.*

A facial challenge to a legislative Act is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). A plaintiff generally cannot press a First Amendment facial challenge unless the law is "specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *United States v. Pugh*, 90 F.4th 1318, 1329 (11th Cir. 2024) (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)). For example, a trespass rule that applies to everyone — "strollers, loiterers, drug dealers, roller skaters, bird watchers, [and] soccer players" alike — does not facially violate the First Amendment, despite also applying to someone engaging in free speech, because it regulates much non-expressive conduct. *Hicks*, 539 U.S. at 123.

The same is true of the challenged statutory provision. The act of bonding out a criminal defendant is not "*necessarily* associated with speech" in all circumstances, because a person or entity may decide to bond someone out for all sorts of non-expressive reasons. Indeed, in most instances, the act of posting bond is not expressive at all. It is not speech-centered conduct that serves as a common

mode of expression, and thus regulations of the bonding out process are not amenable to facial challenge like the one Plaintiffs raise here.

Moreover, Plaintiffs have not established that the law would be invalid in all (or even most) of its applications. Plaintiffs emphasize that, in addition to "making cash bail payments to free impoverished people from detention," they "[e]ngage with like-minded people toward a common cause," "express opposition to poverty-based incarceration," "promote a vision of racial equality," and "advocate and organize in opposition to poverty-based detention." (Doc. 2-1 at 3). As discussed, this shows only that it is their speech (not their conduct) that conveys their message. But even assuming it showed their payment of a cash bond could be expressive in some instances, Plaintiffs cannot show that making such payments is inherently expressive in every case. They have thus "failed to contend with any of the plainly legitimate applications of the [challenged law]." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1374 (11th Cir. 2022).

*Food Not Bombs* confirms as much. There, the Eleventh Circuit held that "[w]hether food distribution or sharing can be expressive activity protected by the First Amendment under particular circumstances is a question to be decided in an as-applied challenge" because, in many instances, sharing food is not expressive conduct. 901 F.3d at 1241 (alterations adopted and quotation omitted). That is true here, too. At the very minimum, posting bond is not *always* expressive. Plaintiffs' facial challenge cannot succeed.

    *6. The challenged statute does not regulate expressive association*.

-14-

The Supreme Court has long "recognized a First Amendment right to associate for the purpose of speaking, which [it has] termed a 'right of expressive association.'" *Rumsfeld*, 547 U.S. at 68. *See also Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984) ("implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends"). Plaintiffs contend that the challenged provision prohibits them from associating with each other and others for the purposes of bailing people out of jail and conducting "relationship-building activities" with individuals it has bailed out. (Doc. 2-1 at 20-21). But it imposes no such prohibitions. Plaintiffs are free to engage in all manner of speech criticizing the cash bail system (and anything else they wish to speak about) and to associate with others for the same purpose. And they are free to bail people out of jail, as individuals or as a group, so long as they comply with the same requirements that other similar entities, organizations, and individuals who choose to engage in such conduct must follow. *See Rumsfeld*, 547 U.S. at 69-70. Freedom of association is not implicated simply because a regulation has an effect on conduct that a group of individuals happen to be engaging in at the same place and at the same time. Yet that is essentially what Plaintiffs argue here. Their argument fails.

     7.  *The challenged statute does not burden Plaintiffs' religious exercise.*

"The Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the

conduct of the Government's internal procedures." *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 448 (1988) (quoting *Bowen v. Roy*, 476 U.S. 693, 699-700 (1986)). "[T]he threshold questions in analyzing a law challenged under the Free Exercise Clause are (1) is the law neutral, and (2) is the law of general applicability?" *First Assembly of God v. Collier County*, 20 F.3d 419, 423 (11th Cir. 1994). In other words, the Free Exercise Clause "does not inhibit enforcement of otherwise valid regulations of general application that incidentally burden religious conduct." *Id.*  And "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

The statute at issue is clearly neutral and of general applicability. The limitation on three cash bonds per year in any jurisdiction applies to all. And the state is entitled to run their bail system as they see fit to serve their "compelling interest in ensuring that pretrial detainees appear for trial." *Schultz*, 42 F.4th at 1324. "The Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens." *Lyng*, 485 U.S. at 448 (internal quotation and citation omitted). Yet Plaintiffs argue that because they want to provide charitable bonds as an expression of their religious beliefs, the government should be required to alter their statutory bond scheme. Not so. "[C]laims of religious

-16-

conviction do not automatically entitle a person to fix unilaterally the conditions and terms of dealings with the Government. Not all burdens on religion are unconstitutional." *Bowen*, 476 U.S. at 701-702 (citing *Reynolds* v. *United States*, 98 U.S. 145 (1879)).

If Plaintiffs choose to engage with the bond system, they must do it within the neutral structure that the State requires. "When followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their own conduct as a matter of conscience and faith are not superimposed on the statutory schemes which are binding on others in that activity." *United States v. Lee*, 455 U.S. 252, 261 (1982). Here, the challenged statutory scheme imposes neutral standards which are generally applicable to all. It is *Plaintiffs* that seek "preferential, not equal, treatment; [they] therefore cannot moor [their] request for accommodation to the Free Exercise Clause." *Martinez*, 561 U.S. at 697.

The challenged legislation concerns only a state system, and one that the State has a compelling interest in running. Any incidental burden on Plaintiffs' religious expression is not unconstitutional.

8. *The law's requirements satisfy First Amendment scrutiny.*

Even assuming Plaintiffs could show that the challenged provision burdens protected speech or inherently expressive conduct, it is constitutional. As an initial matter, clerk's and sheriff's offices, where the regulated conduct of paying cash bonds is undertaken, are nonpublic forums. In contrast to a public forum, which is "used for purposes of assembly, communicating thoughts between citizens, and

discussing public questions," *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quotation omitted), the state may dedicate a nonpublic forum to a particular purpose, including by limiting the content or allowing only certain speakers to speak. *Bloedorn v. Grube*, 631 F.3d 1218, 1235 (11th Cir. 2011). The offices of a court clerk or a county sheriff, where bonds might be paid, are such places. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467, 478 (2009) (observing that government property is not a public forum if that would "defeat[] the essential function of the land or the program" and refusing to treat park as traditional public forum in context of "privately donated, permanent monuments"). Regulations in nonpublic forums need only be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 12 (2018) (quotation omitted).

The challenged statutory provision easily satisfies this requirement. The state has a legitimate interest in regulating its own system of pretrial detention and bail. And the provision is reasonable. "The legislature could have determined, [for instance], that charitable bail organizations have different incentives, resources, and ties to the community than other bail payors, and therefore, that it was appropriate to treat them differently than bail payors who risk their own money and weigh their own safety to bail out a defendant." *Bail Project*, 76 F.4th at 578. See also *Schultz*, 42 F.4th at 1324 (observing that by posting one's own bail, "the accused has made a showing—a financial sacrifice—that he will appear for his trial.").

-18-

Moreover, even if clerk's and sheriff's offices are public forums *and* the challenged provision was found to regulate expressive conduct, it is still constitutional. Content-neutral regulations of expressive conduct are valid when they are "narrowly drawn to further a substantial governmental interest … unrelated to the suppression of free speech." *Clark v. Cmty. For Creative Non-Violence,* 468 U.S. 288, 294 (1984) (citing *United States v. O'Brien,* 391 U.S. 367, 377 (1968)). A regulation that covers conduct (as opposed to verbal or written speech) is content neutral so long as it "serves purposes unrelated to the content of expression … even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Here, the challenged law applies to the posting of cash bonds regardless of the motivation or message intended to be sent by doing so. And it regulates the act without precluding expression. It is content neutral. *See, e.g., First Vagabonds Church of God v. City of Orlando*, 638 F.3d 756, 761–62 (11th Cir. 2011) (en banc) ("[T]he interest of the City in managing parks and spreading large group feedings to a larger number of parks is unrelated to the suppression of speech."). The statute also leaves wide open other avenues for conveying one's opposition to cash bail systems. It does not stop Plaintiffs from speaking or engaging in any forms of advocacy to convey their "message in opposition to unjust pretrial detention" and "poverty-based incarceration." (Doc. 2-1 at 3). It simply requires that they comply with regulations the General Assembly deemed necessary if they opt to engage in the conduct of posting cash bail. That alone makes it narrowly

tailored. *See Lichtenstein v. Hargett*, 83 F.4th 575, 598 (6th Cir. 2023) ("[c]onduct restrictions will never 'burden substantially more speech' than necessary."). The requirements impose, at most, a negligible First Amendment burden because they "leave open every avenue for actual speech." *Id*. at 599. And they pass constitutional muster.

**B. Georgia's law is not unconstitutionally vague.**

Plaintiffs also seek to invalidate § 17-16-15(b)(4) by arguing that it is impermissibly vague in violation of the Fourteenth Amendment. They point to the lack of a definition for the terms "jurisdiction" and "group" and to the statute's imposition of the same licensing requirements for charitable bonds as currently exist for surety bonds.[2] But as with all of their claims, Plaintiffs conflate their conduct – i.e., paying a bond – with their speech about that conduct. Nothing in the challenged statute regulates Plaintiffs' speech activities. As discussed above, Plaintiffs' protected speech about their bond paying activities does not cloak the actual payment of the bonds in the protections of the First Amendment. By conflating the speech with the payment of the bond, Plaintiffs argue for a

---

[2] To be clear, Sec. 4 of SB 63 simply makes those providing charitable bail funds subject to the same licensing requirements that already apply to professional bondsman. *See* O.C.G.A. § 17-6-15(b)(4) (providing that those that "purport[ ] to be a charitable bail fund with the purpose of soliciting donations to use for securing the release of accused persons shall be required to submit to the *same requirements as any professional surety company*, including, without limitation, the requirements set forth in paragraph (1) of this subsection and Code Sections 17-6-50, 17-6-50.1, and 17-6-51.") (emphasis added). Plaintiffs do not directly challenge any of the requirements set forth in O.C.G.A. §§ 17-6-50, 17-6-50.1, and 17-6-51.

heightened scrutiny with respect to their due process claim, but no heightened scrutiny applies.[3]

The void for vagueness doctrine focuses on two issues: 1) whether the statute defines the offense with sufficient definiteness such that ordinary people can understand what conduct is prohibits; and 2) whether the statute encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A term is not vague merely because it is not defined within the statute. *United States v. Sepulveda*, 115 F.3d 882, 886 n. 9 (11th Cir. 1997). The standard by which a regulation is measured for vagueness is whether "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *DA Mortg., Inc. v. City of Miami*, 486 F.3d 1254, 1271 (11th Cir. 2007). "[M]athematical certainty" is not required. *Id.* "Perfect clarity and precise guidance have never been required." *Ward*, 491 U.S. at 794. "[T]he complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)). And when, as here, a statute does not affect constitutionally protected conduct, it will survive a facial challenge

---

[3] Even if heightened scrutiny applied (and it does not), the challenged statute is still not vague. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010) (internal quotation and citation omitted).

unless "the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman*, 455 U.S. at 494-495. *See also Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1176 (11th Cir. 2018) (rejecting First Amendment and vagueness challenge to city ordinance and observing that, "[t]o succeed on a claim that an ordinance is void for vagueness, 'the complainant must demonstrate that the law is impermissibly vague in all of its applications.'") (quoting *Vill. of Hoffman* 455 U.S. at 497); *Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1138 (11th Cir. 2014) ("An enactment that is not impermissibly vague in all its applications will survive a vagueness challenge."). For this reason, a party "'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Humanitarian Law Project*, 561 U.S. at 18-19 (quoting *Vill. of Hoffman*, 455 U.S. at 495).[4]

And before declaring vagueness, courts must exhaust the traditional tools of statutory interpretation. *United States v. Bronstein*, 849 F.3d 1101, 1106-08 (D.C. Cir. 2017). Applying those tools, the meaning of Georgia's law is clear:  those making charitable bond payments must now abide by the same rules that apply to professional surety companies. And everyone, surety companies and Plaintiffs alike, may only post three cash bonds per year in any jurisdiction. Plaintiffs

---

[4] Similarly, here, Plaintiffs cannot complain that the term "group" is vague when they clearly fit within the other enumerated parties to which the regulation applies, i.e., individuals and nonprofit corporations.  *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1271-1272 (11th Cir. 2011) (rejecting facial challenge to term "unlawful storage" as vague where Plaintiff's own conduct was "clearly proscribed by the storage ordinance.")

contend that the provision allows only three cash bonds per year in the entire state. In arriving at this construction, they focus on the term "jurisdiction" in isolation. But to the extent any ambiguity even exists, when read in *context* (as statutory terms that may seem ambiguous are to be read), the remaining terms of the statute make clear that "jurisdiction" refers not to "the State of Georgia," but to the place where bonds are paid, i.e., in a particular court. *See United Sav. Ass'n of Tex. V. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("A provision may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme."); *Kovacs v. Cooper*, 336 U.S. 77, 79 (1949) (rejecting challenge to an ordinance banning "loud and raucous" sound amplification). Here, the challenged provision must be read in context of the state's bail bond system. In that context, the meaning of its terms is clear.

Even if this Court disagrees with the State's interpretation of the statute, that does not mean the statute is unconstitutionally *vague*. It just means the statute requires interpretation. Courts frequently interpret statutes and, indeed, "a court may cure a law's vagueness by statutory interpretation." *High Ol' Times v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982) (interpreting a Georgia criminal statute). Deciding between competing plausible interpretations is the *point* of statutory construction; it is not evidence of unconstitutional vagueness. *Martin v. Lloyd*, 700 F.3d 132, 137 (4th Cir. 2012). Based on any reasonable interpretation, Plaintiffs have fair notice of their obligations under the statute. *Williams*, 553 U.S. at 304. It is not unconstitutionally vague.

-23-

II. **The equities weigh against a grant of preliminary injunctive relief.**

Plaintiffs' likely failure on the merits is the most important reason to deny an injunction. But the equities also tilt against them. First, as for irreparable harm, it is an absolute prerequisite for a preliminary injunction—the mere "possibility" of such harm is not enough. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs claim they will suffer "immediate and irreparable harm" in the absence of an injunction because they "have already each made three cash bail payments in 2024" and they "risk criminal penalties" if they make another. (Doc. 2-1 at 26). But this assertion is premised on a reading of the statute that makes little sense and ignores well established rules of statutory interpretation. *See infra*, Sec. I.B. The more plausible reading, and the one consistent with the scheme and context in which the provision exists, is that Plaintiffs (along with everyone else) may only post three cash bonds per year in any particular court. *Id.* As far as Plaintiffs' contention that they are entitled to a presumption of "per se irreparable harm" applicable to free speech violations, no such presumption applies here, where the statute sought to be enjoined does not even implicate, much less violate, the First Amendment.

Second, the State's interests here, as well as the public interest, weigh against an injunction. *Nken*, 556 U.S. at 435 ("These factors merge when the Government is the opposing party."). The harm to the State is significant and irreparable: "the inability to enforce its duly enacted [statutes] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). *See also Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("[A]ny time a State is

-24-

enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The public likewise has an interest in seeing its own statutes enforced. And the General Assembly and the Governor, in enacting SB 63, have already weighed the public's interest and determined that it is best served by imposing requirements on individuals and entities engaged in the conduct of bailing out criminally charged individuals.

Finally, Plaintiffs' delay in commencing this action weighs against the entry of immediate "emergency" injunctive relief, in addition to calling into question their claims of irreparable harm. *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) (a "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm"). Plaintiffs have asked this Court, on very short notice and with little time for defendants to respond, to take the extraordinary step of enjoining the operation of a duly enacted state law. Plaintiffs offer no explanation for why they waited almost two months from the enactment of the law to file this challenge, despite being fully aware of it. That is a significant period of time. If Plaintiffs had sought emergency relief even a month ago, it would have allowed for a much more orderly process. Plaintiffs' sudden desire for speed now, when it threatens to preclude the level of advocacy that one would hope for and expect, is inexplicable, and it fatally undermines their request.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion.

Respectfully submitted this 27th day of June, 2024.

CHRISTOPHER M. CARR      112505
Attorney General

BETH BURTON                        027500
Deputy Attorney General

TINA M. PIPER                        142469
Senior Assistant Attorney General

CRISTINA M. CORREIA        188620
Senior Assistant Attorney General

DEBORAH NOLAN GORE        437340
Senior Assistant Attorney General

*/s/ Elizabeth M. Crowder*
ELIZABETH M. CROWDER   100809
 Senior Assistant Attorney General

*Counsel for Defendants Gov. Kemp
and Attorney General Carr*

PLEASE SERVE:

Elizabeth M. Crowder
40 Capitol Square, S.W
Atlanta, GA  30334-1300
Telephone: (404) 458-4323
Facsimile: (404) 651-6920
ecrowder@law.ga.gov

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C.

The brief is prepared in 14-point Times New Roman font.

*s/ Elizabeth M. Crowder*
Counsel for Defendants Gov. Kemp
and Attorney General Carr

## **CERTIFICATE OF SERVICE**

I certify that I have this day served the foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send email notification to the attorneys of record.

This 27th day of June, 2024.

*s/ Elizabeth M. Crowder*
Counsel for Defendants Gov. Kemp
and Attorney General Carr